STRAUS, HARTMAN, HOFFLIN & Co. v. L. P. BEARDSLEY, Adm'r. and others.

*Practice—Statute of Limitations—Guaranty—Notice.*

1. If the Judge to whose decision are referred both the law and the facts of a case under C. C. P. § 240 should fail to find the facts fully and distinctly, so that his conclusions of law cannot be reviewed on appeal, the case will be remanded for a fuller finding on the facts.

2. It is the duty of an appellant excepting to the rejection of evidence to set forth the evidence offered, so that the appellate Court may judge of the propriety of its rejection.

3. If suit be brought March 20th 1872 on a cause of action, founded on simple contract, arising subsequent to Aug. 1st 1860, and such action be dismissed for want of jurisdiction, in March 1874, the plea of the statute of limitation will not avail against a second suit on the same cause of action begun Dec. 31st 1874.

4. Where several persons undertook, in the sum of one hundred dollars each that if a certain mercantile firm should furnish J. L. P., as agent for said firm, with goods for sale on commission *or otherwise,*" in default of his fairly settling and accounting with said firm, they would pay the amounts for which they were respectively bound ; *Held,*

(1) That the obligation was to guaranty *the contract* of J. L. P. and was therefore absolute and unconditional; and that the makers of the paper were not entitled to notice from the firm of the delivery of the goods, nor of the failure of J. L. P. to pay for the same accompanied with a demand on the guarantors.

2) That the obligation was not restricted to accountability for the first lot of goods delivered, but was intended to secure the firm from loss in their successive dealings with J. L. P., and provide them a continuing indemnity.

*Semble,* that the obligation bound the makers only for the acts of J. L. P. as agent, and not for absolute purchases made by him.

(*Sutliff* v. *Lunsford,* 8 Ire. 318 ; *Whitesides* v. *Twitty,* Ib. 431 ; *Skillington* v. *Allison,* 2 Hawks 347 ; *Morrison* v. *Conelly,* 2 Dev. 233 ; *Williams* v. *Collins,* 2 Car. L. R, 382, cited and approved.)

(RODMAN, J, *Dissenting,* cited *Williams* v. *Collins,* 2 Car. L. R. 382 : *Shewell* v. *Knot,* 1 Dev. 404 ; *Draughan* v. *Bunting,* 9 Ire. 10 ; *Beeker* v. *Saunders,* 6 Ire. 380 ; *Spencer* v. *Carter,* 4 Jones 287.)

CIVIL ACTION, tried at Spring Term, 1877, of PITT Superior Court, before *Eure, J.*

This action was brought upon an instrument of writing as set out in the opinion, and upon the trial before a Justice of the Peace, the defendant pleaded general issue, statute of limitations, payment, accord and satisfaction, and a want of notice and demand. Judgment was rendered for the plaintiffs, and the defendant appealed to the Superior Court.

The case states: Upon the trial in the Court below, in order to repel the bar of the statute of limitations, the plaintiffs offered in evidence the record of an action brought upon the same bond, the summons in which was issued on the 20th of March, 1872, served on all the defendants, and that the said action was dismissed at March Term, 1874, for want of jurisdiction. The summons in the present action was issued on the 31st of December, 1874, and served on W. K. Delany, administrator of W. B. Eborn, and during the pendency of the action, Delany died, and Beardsly was made a party defendant as administrator d. b. n. of Eborn.

The plaintiffs offered in evidence the deposition of Stern Hartman, one of the plaintiffs, taken during the pendency of the original action by a commissioner of affidavits for North Carolina, in the city of Baltimore. Notice of taking the deposition was given to the attorney, who represented all the defendants, except the defendant administrator, whose attorney, before the date of the notice to take depositions, filed an answer for defendant administrator, and the other attorney also filed answers for the other defendants. The deposition was taken, sent to the clerk and opened in open Court.

The defendants objected to the reading of the deposition upon the ground: 1.—That the deponent was a party plaintiff and incompetent because J. L. Paul, plaintiffs' agent, was dead at the time the deposition was taken. 2.—That there was no notice of taking the same served on the

representative of W. B. Eborn, or his attorney. 3.—That the deposition was taken in another suit of which the Court had no jurisdiction. The objection was sustained and the plaintiffs excepted.

The plaintiffs then offered the deposition of D. S. Stewart, taken by the commissioner as aforesaid, to which the defendants objected. Objection overruled. The deponent testified that in 1860-'61, he was the shipping clerk of plaintiffs, and that the paper writing (sales and transactions between plaintiffs and Paul), is a bill of goods sold and delivered to James L. Paul, doing business at Greenville, N. C., at or about the dates as charged. Deponent attended to packing and shipping the goods. The account was just and correct, and prices the same as paid by other customers at the dates of sale,

The plaintiffs further proved that Paul died, insolvent in 1870, and that demand was made upon his administrator to pay the amount of the bill of goods. And demand was also made upon Delaney, administrator of Eborn, some time after the death of Paul, and before this action was brought.

The defendants insisted that the plaintiffs could not recover; 1.—Because there was no evidence of the existence of any such firm as that of the plaintiff at the time the action was brought, and that it could only be maintained by the surviving member of the same. 2.—Because the terms of the guaranty were not complied with by the plaintiffs. 3.—Because the guaranty of defendants was to pay for such goods as plaintiffs might deliver to Paul as their agent, and the evidence was that the sale was an absolute one from plaintiffs to Paul; and the guaranty was not a continuing one, but confined to the first transaction between Paul and plaintiffs, and all goods obtained by Paul were paid for. 4.—Because there was no evidence that the paper writing declared on was accepted by plaintiffs, and no notice was given to defendants that plaintiffs intended to act under it;

---

STRAUS & CO. *v.* BEARDSLEY.

---

nor was notice given to the defendants of the sales made to Paul, or of the default of Paul, until 1872.  5.—That plaintiffs' cause of action is barred by the statute of limitations.

His Honor being of opinion with defendants dismissed the action, and the plaintiffs appealed.

*Messrs. Battle & Mordecai,* for plaintiffs.
*Messrs. Jarvis & Sugg,* and *Gilliam & Gatling,* for defendants.

SMITH, C. J.   This action was commenced on the 31st day of December, 1874, before a Justice of the Peace, and upon the following contract:—

"GREENVILLE, N. C., August 1, 1860.
We, the undersigned, acknowledge ourselves indebted to the firm of Straus, Hartman, Hofflin & Co. in the sum of one hundred dollars each, for payment of which well and truly to be made, we bind ourselves, our executors, administrators and heirs.   The condition of the above obligation is such that if the said firm of Straus, Hartman, Hofflin & Co. shall furnish James L. Paul as agent for them, with goods for sale on commission or otherwise, and the said James L. Paul shall thereafter fully and fairly settle and account for the said goods, then the above obligation to be void; otherwise to be and remain in full force and effect."

The contract is executed by W. B. Eborn, the defendant's intestate, and fifteen other persons.

The record of proceedings is very imperfect, but its omissions are supplied by the statements contained in the case sent up with it.   The following defences are made to the action.  (1.) A general denial of liability on the contract.

(2.) The want of notice to the intestate of the delivery of the goods to Paul, and of a demand of payment. (3.) The bar of the statute of limitations. The action was brought against W. K. Delaney, the administrator of W. B. Eborn, who died pending the suit, and the present defendant as administrator *de bonis non* was substituted in his place.

There is but one distinct exception of the plaintiffs taken at the trial, and this was to the rejection of the deposition of the plaintiff, Stern Hartman, offered in evidence. The deposition had been taken in a former action instituted in the Superior Court by the plaintiffs against the first administrator of the intestate, Eborn and others, who signed the contract, and was dismissed for want of jurisdiction. The evidence contained in the deposition is not set out, nor the purpose for which it was offered stated, and we are consequently unable to see that it was either relevant or competent, or that any injury resulted from its exclusion. It was the duty of the plaintiffs, as has repeatedly been decided, to show that the rejected evidence was competent and proper. *Sutliff* v. *Lunsford*, 8 Ire. 318; *Whitesides* v. *Twitty*, 8 Ire. 431. The exception must be overruled.

The evidence given by the plaintiffs is set out in the case, and without finding any fact, the Judge who, under the agreement of parties was to find the facts, being of opinion that the plaintiffs could not recover, dismissed their action. But we are not informed upon what grounds the action is dismissed, nor which of the defendants' objections are deemed valid and fatal to the plaintiffs' recovery. We must therefore in reviewing the correctness of the ruling of the Court below, assume as proved, not only such facts as are directly testified to, but such as may be reasonably inferred from the evidence. We will therefore consider the defences set up, and their sufficiency to warrant the judgment of the Court :—

1. The statute of limitation is insisted on as a bar to the

action : This defence is not tenable. The goods were de-livered to Paul in August, 1860, and afterwards. The first action, dismissed for want of jurisdiction, was commenced March 20th, 1872, and ended at March Term, 1874, of the Court. The present suit was instituted on December 31st, 1874. Excluding the interval during which the statute of limitations was suspended, three years had not elapsed from the delivery of the goods when suit was instituted, and the present action is brought within a year after the termina-tion of the other. The plaintiffs are thus relieved from the effects of the lapse of time, and their claim protected. The judgment dismissing the action is in substance a non-suit and must be attended with the same legal consequences ; and a non-suit though not within the very words of the act, has been held by express adjudication, and long and uni-form practice, to be within its scope and meaning. Rev. Code, ch. 65, § 8. *Skillington* v. *Allison*, 2 Hawks 347 ; *Mor-rison* v. *Conelly*, 2 Dev. 233.

2. The contract is alleged to be one of guaranty, and to require notice of delivery of goods under it, in order to cre-ate a liability therefor : It is true in ordinary cases of guar-anty, such as letters of credit, the guarantor can not be made responsible for goods sold on the faith of it, unless notice is given him in a reasonable time, and be thus afforded an opportunity of securing from the party to whom they are delivered an indemnity against loss to himself. But if the undertaking be to *guaranty* the contract which may be made, the obligation is not collateral and contingent, but absolute and unconditional, and no notice is necessary. *Williams* v. *Collins*, 2 Car. L. R. 382. Such in our opinion is the contract of the intestate. It is in the form of a penal bond, and lacks only one element, a seal, to make it such. The undertaking is to pay a certain sum, and by the terms of the condition it is discharged only when goods have been delivered under its provisions, by *actual payment* of the

purchase price. If the goods are delivered, the contract is to pay for them, and a compliance with this condition is the only means of discharging the obligation. It thus became the duty of the intestate and his associates to ascertain for themselves if the plaintiffs furnished goods to Paul, and that they were paid for, and no notice or demand was necessary to charge them with the debt.

3. The contract as construed by the defendant applies only to a delivery of goods to Paul, as agent of the plaintiffs, for sale on commission or other compensation, and is confined to a single transaction; and it is insisted that the dealings between these parties, as disclosed by the evidence and account exhibited, are those of vendor and vendee, and are outside the protection of the contract.

If we admit this to be the true and proper meaning of the undertaking, and we are inclined to do so, we are not prepared to say it does not embrace the transactions now under investigation. The evidence shows a delivery of goods shortly after the contract was entered into, at different times and at specified prices, and the witness speaks of it as a sale. But the entry on the plaintiffs' books specifying the articles delivered, their dates and prices, would be similar in all probability, if they were transmitted to an agent for disposal, and is but a detailed memorial of the transaction. The *terms* and conditions on which the deliveries were made are not shown, nor the true character of the dealings revealed in the evidence. In the absence therefore of any findings of fact by the Judge, we cannot declare these dealings not embraced in the intestate's obligation. The facts should have been reported, as found by the Judge, and not meagre evidence set out instead, in order that we may properly apply the principles of law which control and govern them.

In our opinion the obligation is not restricted to one act of delivery, but was intended to secure the plaintiffs from

loss in their successive dealings with Paul, and provide for them a continuing indemnity. The cause must be remanded in order that the true character of the transaction, and the terms and conditions on which the plaintiffs' delivered the goods may be ascertained, and the liability if any incurred by the intestate in regard to them, determined.

The judgment below was erroneous and is reversed and the cause remanded. Let this be certified.

RODMAN, J., *Dissenting.* I do not concur in the judgment of the Court. I think the judgment below dismissing the action should be affirmed. It is clear to me that taking all the evidence for the plaintiffs as true, they have failed to make out a case entitling them to recover. On the contrary the case presented by them is fatally defective :—

1. The writing signed by the intestate of defendant, and others, which the plaintiffs exhibit as the foundation of their claim, is an *offer* to guaranty that if plaintiffs would furnish Paul with goods to sell as agent for plaintiffs, he (Paul) would account for the same, or that in case of his failure to do so, each of the signers would severally make good his proportion of the loss to an amount not exceeding $100. The form of the writing is an acknowledgment of indebtedness to the plaintiffs, conditioned to be void in a certain case. But the substance and effect of the writing is as I have stated. If the object be justice, we must in all cases look beyond the form into the substance and effect of a contract; and especially is this true of commercial instruments of writing. Men of business are rarely acquainted with the forms or technicalities of the law ; and in order to ascertain the intent of their contracts, we must construe them without reference to form or technicality. The writing, however else it may be construed, could be nothing but an offer. The plaintiffs on receiving it were not bound

to intrust Paul with goods to sell as their agent, and no contract was completed between them and the signers of the offer, until its acceptance was notified in some way to the signers. No authority need be cited for this, but I refer to 2 Pars. on Contracts, 12. Notice of assent may often be inferred from the conduct of the parties, but I find no evidence of it in this case.

In the case of an offer to guaranty payment for goods to be sold, or the fidelity of an agent to be intrusted with goods for sale, it has been held that notice is required, not merely of assent to the offer, but of the fact that the agent has actually been intrusted with goods for sale, according to the contract; and some cases say the guarantor should be notified of the value of the goods. 2 Pars. on Contracts, 12, *et seq.*

I refer to two cases only, not only because they are in point, but they settle the question discussed in this Court in *Shewell* v. *Knox*, 1 Dev. 404 : On the 25th of September, 1832, Calvin Jones (of Raleigh) wrote to the plaintiffs, merchants in New York, offering to become security for any goods Miss Miller might purchase, &c. The plaintiffs thereupon sold goods to Miss Miller on the faith of the guaranty which they kept, but gave no notice thereof to the defendant. Miss Miller failed to pay; suit was brought against the defendant, and the Supreme Court of the United States gave judgment for him, on the ground of the want of notice that his offer had been accepted and acted on. *Adams* v. *Jones*, 12 Pet. 207. The second case is *Reynolds* v. *Douglass*, 12 Pet. 497, and is to the same effect. It is to be noted that in both these cases the letter offering to guaranty was addressed to a particular firm.

As an authority that no notice was required in this case, the Court cites *Williams* v. *Collins*, 2 Car. L. R. 382, decided as far back as 1816. In my opinion the decision does not support the proposition. The instrument on which the ac-

tion was brought was addressed by the defendant to the plaintiffs, and was in substance this: "If you will sell Henry a vessel, &c., I will *guaranty* any contract he may enter into with you for the same, &c." On the failure of Henry to pay his note given for the articles bought, plaintiff sued and got judgment against him. The defence was that by due diligence plaintiff might have made his judgment out of Henry, and that by his want of diligence he had discharged defendant. The Court held that by the terms of the guaranty, the defendant on Henry's failure to pay became absolutely bound to pay the debt, and that plaintiff was not bound to any effort to collect it from Henry. I think the decision was right, although TAYLOR, C. J., dissented. But there was no question as to notice, and the case has no bearing on the present. *Seawell, J.*, said the contract was an absolute one, but he meant only that it became absolute on Henry's failure to pay. It could not be absolute at its making, because Henry was certainly liable, and defendant only on his failure. *Draughan* v. *Bunting*, 9 Ire. 10, a later and leading case, defines decisively when a contract is collateral; it is so whenever some one else is liable in the first instance, and the promise sued on is superadded. See also *Beeker* v. *Saunders*, 6 Ire. 380, and *Spencer* v. *Carter*, 4 Jones 287.

I think that the defendant was entitled to notice that Paul had been intrusted with goods to sell as plaintiffs' agent, and as there is no pretence that he had it, he was never bound.

2. It positively appears from the evidence for the plaintiffs that the offer was never accepted or acted on. The plaintiffs *sold* Paul goods. They do not say that they intrusted him with goods to sell as their agent. The defendant agreed to be liable only for Paul's fidelity as an agent, not for his solvency as a purchaser. The practical difference is great, and needs not to be enlarged on. The Court

are inclined to agree with me on this point. If my opinion and the inclination of the opinion of the Court are right, the plaintiffs can never recover. Why hold out hopes that can only lead them into deeper bogs of litigation? If their case is doomed to death, give it quickly the *coup de grace,* the merciful blow which ends hope and suffering. It is to the plaintiffs' interest as it is to that of the republic " *ut sit finis litium.*"

Error.

PER CURIAM. Judgment reversed and cause remanded.